SANDRA M. LUKASIEWICZ, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lukasiewicz v. Commissioner
Docket No. 11852-87
United States Tax Court
T.C. Memo 1989-68; 1989 Tax Ct. Memo LEXIS 68; 56 T.C.M. (CCH) 1251; T.C.M. (RIA) 89068; February 14, 1989. Mark L. Laughlin, for the petitioner. Robert Archambault, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: In a statutory notice of deficiency dated March 30, 1987, respondent determined deficiencies and additions to the 1983 and 1984 joint income taxes of petitioner, Sandra M. Lukasiewicz, and her husband, Marvin G. Lukasiewicz, as follows: Additions to Tax
Section
Section
Year
Deficiency
6653 (a) (1) [1]
6661
1983
$ 102,584
$ 5,129 *
$ 25,646
1984
59,265
2,963 *
14,816
On May 7, 1987, petitioner filed her petition in this Court contesting the deficiencies and additions. [2]
*70 After concessions by the parties, the issues presented for our consideration in this case are: (1) Whether petitioner should be relieved of joint and several liability for the tax deficiencies pursuant to section 6013(e); and, if not, (2) whether petitioner is entitled to compute her 1983 and 1984 taxes under the "income averaging" method provided in sections 1301 to 1305. FINDINGS OF FACT The parties' stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioner, a retired registered nurse, resided with her husband, Marvin G. Lukasiewicz, in Farwell, Nebraska, when the petition was filed in this case. Petitioner and Mr. Lukasiewicz have been married, without separation, since 1957. Since at least 1976, petitioner and her husband have been co-owners of a precious metals dealership that buys and sells coins, gold and silver. The business has been primarily conducted out of petitioner's home. Mr. Lukasiewicz has been the predominant force behind the business. Petitioner has also been involved in the business, albeit to a lesser extent. She has performed some secretarial-type tasks and she has accompanied her husband *71 to various coin and precious metals shows where he bought and sold coins, silver and gold. For the years at issue, 1983 and 1984, petitioner and her husband reported gross receipts from the business on their Federal income tax returns of $ 837,894 and $ 701,857.82, respectively. The business has obtained a competitive advantage over other precious metals businesses by offering "privacy" to its clients involved in purchase and sale transactions. The names of the clients would not be disclosed to others, including the Internal Revenue Service. As it turned out, the Internal Revenue Service received information that in 1979 Mr. Lukasiewicz, under the name "Marvin Luke," received and cashed a number of checks representing receipts from his business. [3] Upon this information, the Service decided to examine Mr. Lukasiewicz's 1979 income tax return. Revenue Agent Richard Troester of the Internal Revenue Service was assigned to this task. Troester mailed a "form letter," dated January 17, 1983, to Mr. Lukasiewicz informing him that his 1979 income tax return was selected for examination and that an appointment date for the examination was scheduled for February 3, 1983. He was asked *72 to bring all documents to support his income and business expenses as reported on the return. By letter dated January 22, 1983, Mr. Lukasiewicz advised Revenue Agent Troester that they could not meet together because he and his wife were having health problems and because his "tax lady" was too busy to attend the scheduled meeting. Mr. Lukasiewicz further wrote that his tax lady "would like to know what the discrepancy is." (Emphasis added.) Troester inferred that the "tax lady" was the preparer of the 1979 return. However, Troester later discovered that no income tax return was filed by either petitioner or her husband for 1979. Therefore, on January 31, 1983, Troester sent a second letter to both Mr. and Mrs. Lukasiewicz advising them that the records of the Internal Revenue Service indicated that they had not filed a 1979 income tax return. He requested that they provide him with a copy of their 1979 return, if one was filed, or an explanation as to why they did not file a return. He further advised them that *73 he wanted to meet with them prior to April 15, 1983. As the investigation progressed, the Internal Revenue Service widened its scope to include the years 1976 through 1982. It had become apparent that petitioner and her husband had failed to file income tax returns for those years, although they had substantial amounts of gross income from their precious metals business. Being concerned about the investigation, petitioner and her husband decided to seek the assistance of an attorney. On March 13, 1983, they met with attorney Patrick Shaughnessey in St. Paul, Nebraska. Mr. Shaughnessey referred them to Attorney Robert J. Murray. On March 15, 1983, they met with Mr. Murray in Omaha, Nebraska, regarding the pending tax investigation. Petitioner was also present at a May 17, 1983, meeting with her husband, Mr. Murray and Virgil J. Goracke, an accountant assisting in the investigation. That meeting involved the strategy to be taken at an upcoming meeting with the Internal Revenue Service. Throughout the investigation, Revenue Agent Troester attempted to meet with petitioner and her husband to examine their business records relative to the income and expenses of the business *74 for the years 1976 through 1982. Finally, by letter dated August 8, 1983, Troester advised them that he had determined from third-party sources that they had substantial amounts of gross income for the taxable years 1976 to 1982. He requested that they meet with him on August 17, 1983, to explain why returns for those years were not filed and to provide records pertaining to their sales, cost of sales and expenses. Troester's attempts were unsuccessful. Petitioner and her husband refused to meet with Troester, and they failed to furnish their business records during the investigation. With the use of third-party sources, Troester completed his examination for the years 1976 through 1982. On February 5, 1984, respondent mailed a statutory notice of deficiency to Mr. Lukasiewicz which reflected that substantial unreported income had been derived from the precious metals business in those years. The notice determined tax deficiencies totaling $ 1,147,799 and additions totaling $ 414,595. In response to the notice of deficiency, petitioner's husband filed a petition in this Court contesting the deficiencies (docket No. 12766-84). Shortly before the trial in that case, which *75 was subsequently settled before trial, some business records sought by Troester during the investigation were provided to him. Those records were incomplete at best. Petitioner's husband did not keep sufficient and adequate records regarding the precious metals business. He did not maintain any inventory records, sales journals, cash receipts journals, sales invoices or other records regarding sales of coins, gold and silver. With respect to the years at issue here, 1983 and 1984, petitioner and her husband timely filed their joint Federal income tax returns. They signed the 1983 and 1984 returns on April 14, 1984, and March 21, 1985, respectively. They reported gross receipts from their business, cost of goods sold in the business, expenses, business net profit (loss), total taxable income and total tax as follows: 1983
1984
Gross receipts
$ 837,894.00
$ 701,857.82 Cost of sales
820,682.00
693,266.22 Expenses
16,246.00
11,045.63 Net profit (loss)
966.00
(2,454.03)
Taxable income [4]
9,001.00
(820.00)
Tax
484.00
-0-  At the time petitioner signed *76 the 1983 and 1984 joint returns, she knew that neither she nor her husband had filed income tax returns for the years 1976 through 1982 and that the Internal Revenue Service had commenced an extensive investigation regarding those years. Petitioner also knew the investigation involved the amount of income, expenses and cost of goods sold in her and her husband's precious metals business. In addition, petitioner knew her husband did not maintain adequate business records and that the Internal Revenue Service was claiming that her husband was liable for substantial amounts of taxes for the years 1976 through 1982 as a result of unreported income from the business. By letter dated December 31, 1985, Revenue Agent Troester advised petitioner and her husband that their 1983 and 1984 joint income tax returns were selected for examination. He requested that they meet with him on January 13, 1986, and produce, among other items, "All books and records used to determine gross receipts, cost of sales and expenses" with respect to their precious metals business for 1983 and 1984. In response to the letter, petitioner and her husband furnished some of the records that were requested. No *77 meeting, however, took place. By letter dated April 4, 1986, Troester advised petitioner and her husband that the records they furnished were incomplete and inadequate. He requested that they meet with him and produce complete inventory, sales and expense records. Petitioner and her husband, by their attorney, informed Troester that the records previously provided were all that were available for 1983 and 1984. They again declined to meet with him. Troester found no difference in the type of business records maintained and produced by petitioner's husband for 1983 and 1984 with those that were maintained and produced for the years 1976 through 1982. That is, petitioner's husband maintained and provided incomplete records for purchases and business expenses and no records pertaining to inventory and income. In an attempt to determine the accuracy of the 1983 and 1984 returns, Troester contacted third parties and examined what little information was provided by petitioner and her husband. Troester determined that the expenses and costs of goods sold reported on the returns were greater than what could be verified and, therefore, overstated. Therefore, respondent determined *78 additional taxes for petitioner and her husband for 1983 and 1984 in the approximate amounts of $ 102,000 and $ 60,000, respectively. Petitioner's husband has admitted that the cost of goods sold and Schedule C business expenses claimed in the metals trading business were overstated on their 1983 and 1984 joint income tax returns. OPINION With one exception, [5] petitioner does not dispute the correctness of the deficiencies and additions to tax for 1983 and 1984. However, petitioner contends that she should be relieved of the joint and several liability imposed by section 6013(d)(3) for the deficiencies because she is an "innocent spouse" under section 6013(e). To obtain relief under section 6013(e), as amended by the Tax Reform Act of 1984, [6] the person claiming innocent spouse status must prove: (1) That a joint return has been made for the taxable year(s) at issue; (2) that on such return there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; *79 (3) that the spouse claiming relief did not know and had no reason to know of the substantial understatement when signing the return; and (4) that, after considering all the facts and circumstances, it would be inequitable to hold the spouse seeking relief liable for the deficiency in income tax attributable to the substantial understatement. See section 6013(e)(1); , affd. . Each of these requirements must be satisfied to obtain innocent spouse relief. The dispute between the parties is whether petitioner has satisfied the "knowledge" and "equity" requirements enumerated in section 6013(e)(1)(C) and (D), respectively. To satisfy the requirements of section 6013(e)(1)(C), petitioner must establish that in signing the 1983 and 1984 joint returns, she did not know and had no reason to know that there was a substantial understatement *80 of tax. Thus, it is not enough for petitioner to show that she lacked actual knowledge of the understatement. She must also show that she had no reason to know of the understatement. ; . This issue is essentially factual. In order to prove that petitioner had no reason to know of the understatement, she must convince us that a reasonably prudent person with her knowledge of the surrounding circumstances would not and should not have known of the omissions, keeping in mind her level of intelligence, education and experience. . We stated in , that "the standard to be applied is whether a reasonable person under the circumstances of the taxpayer at the time of signing the return could be expected to know" of the understatement. Applying this standard to the facts of the present case, we conclude that petitioner has failed to meet the test and is, therefore, not entitled to the relief afforded by section 6013(e). Petitioner *81 testified that she did not participate in the preparation of the 1983 and 1984 returns, review their contents or make any inquiries regarding the returns. She, therefore, concludes that she had no actual knowledge of the understatements of tax caused by her husband's gross overstatements of the business' expenses and costs of goods sold. This may be so. However, any claim that petitioner had no reason to know of the understatements stretches credulity. The facts of this case show that petitioner is an intelligent, mature and educated person who assisted her husband in running their precious metals trading business out of their home. It was the gross overstatement of the expenses and cost of goods of this business which created the understatements of tax at issue. At the time petitioner signed the 1983 and 1984 returns, she knew that her husband did not maintain complete and accurate business records. She also knew that the Internal Revenue Service had commenced a broad investigation involving their last 7 taxable years -- for which she knew that tax returns had not been filed -- and which focused upon the income derived from, expenses incurred and cost of goods sold in *82 the business. In addition, petitioner knew that as a result of the investigation, the Internal Revenue Service was claiming that a large amount of taxes was owed for those years. Hence, petitioner had reason to doubt the quality or accuracy of what her husband claimed on the 1983 and 1984 returns and, further, to doubt the sufficiency of the underlying documents and records. Petitioner was on notice that the amounts claimed on their returns may not have reflected reality. A spouse, such as petitioner, may in fact have no actual knowledge of irregularities in the return which she signs, but we cannot ignore matters which would have put her on notice that there may be irregularities. Accordingly, we hold that petitioner has not met her burden of showing that there were no facts within her knowledge, or as to which she was reasonably chargeable with knowledge or notice, from which a prudent taxpayer would have known of the substantial understatements of tax in the 1983 and 1984 joint returns. Petitioner thus fails to qualify as an innocent spouse for those years. It is, therefore, unnecessary for us to consider the contentions of *83 the parties with respect to the "equity" requirement of section 6013(e)(1)(D). We next address whether petitioner may utilize the income averaging method of calculating her 1983 and 1984 tax liabilities that is contained in sections 1301 to 1305. [7]
Without getting involved with the intricacies of the income averaging provisions, sections 1301 through 1305 generally provide income averaging for an eligible individual whose taxable income for the year in which averaging is elected (the computation year) exceeds 120 percent of his average taxable income in the 4 preceding years (base period years).[8] In short, in order for petitioner's tax liability to be computed under the income averaging method, the correct taxable income for the base periods for both 1983 and 1984 must first be determined. Thus, the question of whether petitioner is entitled to average her income for 1983 and 1984 turns on whether she adequately established her correct taxable income for each of the base period years. . *84 For 1983, those years would be 1979, 1980, 1981 and 1982. For 1984, those years would be 1981, 1982 and 1983. We conclude that petitioner has not met her burden. Petitioner claims in her briefs that the figure to be used as her taxable income for each of the years 1979 through 1982 is $ 0. She argues that since respondent was unable to attribute any taxable income to petitioner for those base period years, she should be able to claim that she had no taxable income for those years. Petitioner is incorrectly attempting to place the burden of establishing her taxable income upon respondent. That burden is squarely upon petitioner. She must establish her correct taxable income with precise data necessary for the computation and that does not consist of merely the taxable income that the Internal Revenue Service can uncover. In this regard, petitioner presented no documentary evidence or testimony to establish *85 that she, in fact, had no taxable income. In fact, petitioner testified that she had an undisclosed amount of dividend income during those years. Furthermore, it also could have been argued that since petitioner was a co-owner of the precious metals business during the years at issue, a portion of the income from that business was attributable to her. Accordingly, we find that petitioner is not entitled to elect the income averaging method of calculating her 1983 and 1984 tax liability. To reflect the foregoing and the concessions of the parties, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
*. Plus 50 percent of the interest due on the deficiencies pursuant to section 6653 (a) (2) ↩
2. Petitioner's husband filed a separate petition with this Court (docket No. 11526-87) regarding respondent's determinations for the years at issue here. On May 2, 1988, we dismissed that case for Mr. Lukasiewicz's failure to prosecute.↩
3. It was only after the investigation had progressed did it become evident that Marvin Lukasiewicz was using the name "Marvin Luke" for business purposes.↩
4. Includes income from sources in addition to the precious metals business.↩
5. Respondent had disallowed a Schedule A contribution deduction of $ 780 for the taxable year 1983. Respondent now concedes that petitioner is entitled to that deduction.↩
6. The Tax Reform Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802, amended sec. 6013(e) retroactively to all years to which the Internal Revenue Code of 1954 applies. A transitional rule is applicable for returns filed before 1985.↩
7. The Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2744, repealed the income averaging rules for tax years beginning after December 31, 1986.↩
8. For computation years beginning after Dec. 31, 1983, the reference to 120 percent is changed to 140 percent and the reference to the average taxable income in the 4 preceding years is changed to the 3 preceding years.↩